IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SCHAETZLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEPHEN J. SCHAETZLE, APPELLANT.

Filed June 2, 2015.    No. A-14-777.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Affirmed.

Michael L. Nozicka, of Nozicka Law Office, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

Stephen J. Schaetzle appeals his conviction and sentence for first degree sexual assault. He asserts that the trial court erred in numerous respects, including overruling his motion to suppress, allowing the State to reference an uncharged sexual assault at trial, overruling his motion for mistrial, improperly instructing the jury, and imposing an excessive sentence. Schaetzle also contends there was insufficient evidence to sustain his conviction and that he received ineffective assistance from his trial counsel. We find no merit to Schaetzle's assignments of error and affirm.

## I. FACTUAL BACKGROUND

### 1. FEBRUARY 2006 FAMILY GATHERING

In February 2006, Schaetzle's extended family gathered together at a hotel in North Platte to celebrate a belated Christmas during Schaetzle's leave from active duty service in the Navy. The family also used this gathering to hold a memorial for Schaetzle's younger brother who had committed suicide a few months earlier. In attendance at this gathering were Schaetzle, Schaetzle's

grandmother and her friend, Schaetzle's mother and stepfather, Schaetzle's stepsister, and Schaetzle's aunt, uncle, and two female cousins, K.S. and A.S. Schaetzle's grandmother had rented four rooms at the hotel, three of which were grouped together on the ground floor.

Although there is some discrepancy regarding the actual sequence of events, there is general agreement that the family held a memorial for Schaetzle's brother, exchanged presents, and had a family dinner on the night of Schaetzle's arrival in North Platte. Following dinner, some family members swam in the hotel swimming pool. Thereafter, the family members spent time in the three ground floor hotel rooms talking with each other. Schaetzle, his stepsister, and his two female cousins congregated in Schaetzle's hotel room to watch television and talk for a period of time that night.

Although Schaetzle was underage, his uncle purchased a bottle of Jack Daniels and some Coca-Cola for him to drink that night. Schaetzle admitted to drinking that night, but stated that he did not drink much and also declared that it took a lot for him to become intoxicated. Schaetzle offered an alcoholic drink to K.S. which she consumed.

At some point that night, Schaetzle asked his stepsister and younger cousin, A.S., to leave his room so he could speak with K.S. alone. At the time, Schaetzle was 20 years old and K.S. was 14. Schaetzle stated that he wanted this period of time alone with K.S. so he could talk with her about his brother's death; K.S. had a close relationship with Schaetzle's brother prior to his death. Later, Schaetzle's stepsister came back into Schaetzle's room and slept in the same bed as Schaetzle. K.S. slept on the other bed in Schaetzle's room.

The following morning the family had breakfast together in the hotel. Then, they went to Schaetzle's aunt and uncle's home in North Platte to take pictures and watch some videos Schaetzle had taken while he was stationed with the Navy in Japan. Following the family gathering, Schaetzle left North Platte and resumed his service in the Navy.

### 2. SEXUAL ASSAULT ALLEGATIONS AND INVESTIGATION

In August 2012, K.S. disclosed to her family that Schaetzle had sexually assaulted her that night in February 2006 in his hotel room. Specifically, K.S. alleged that Schaetzle had sexual intercourse with her for approximately 5 minutes that night. K.S. and her father reported the incident to the Nebraska State Patrol. The State Patrol assigned Michael Dowling, an investigator within the criminal division, to the case on August 21, 2012. About a week later, Dowling conducted a formal interview with K.S. at the Family Advocacy Network in Kearney. Following the interview, Dowling requested K.S. to place a controlled call to Schaetzle. Although she was initially reluctant, K.S. eventually agreed to make the call.

On October 17, 2012, K.S. met with Dowling at the Family Advocacy Network to conduct a controlled call with Schaetzle. K.S. made the controlled call from her cell phone which had been connected to Dowling's digital recording device. Dowling was present during the call, passing notes to K.S. which contained questions for her to ask Schaetzle. The phone call with Schaetzle lasted approximately 20 to 25 minutes. Following initial pleasantries, K.S. accused Schaetzle of having sexually assaulted her in February 2006. Schaetzle never explicitly denied K.S.'s allegations, but responded that he did not recall any such event taking place. Schaetzle also told K.S. that he suffered from memory loss due to an electrocution he suffered while he was with the

Navy. His exact story was that he had been electrocuted by 1,250 volts of electricity and had to be revived. As a result of this electrocution, Schaetzle stated that he had amnesia. Schaetzle repeatedly apologized to K.S. during the call, but would not explicitly admit to the assault because he could not remember anything from that time. However, Dowling testified that at some point during the conversation Schaetzle told K.S. "Well, if you say it happened, it probably happened".

Following K.S.'s controlled call to Schaetzle, Dowling continued to investigate the sexual assault allegation. He conducted an interview with A.S., had a conversation with Schaetzle's former wife, and obtained Schaetzle's medical records from the Navy. On November 27, 2012, Dowling met Schaetzle at the University of Colorado in Colorado Springs to conduct an interview. Schaetzle was a student at the university at the time and Dowling arranged to utilize the campus police station for the interview. Dowling explained to Schaetzle at the outset of the interview that he did not have to participate in the interview and that he would not be arrested that day. Dowling also informed Schaetzle of his *Miranda* rights and Schaetzle signed a written waiver of his rights. The entire interview lasted approximately 3 hours and was video recorded.

During the interview, Schaetzle quickly admitted to Dowling that his story related to his electrocution in the Navy was largely fictitious. Schaetzle was not electrocuted by 1,250 volts of electricity, but rather 440 volts, never had to be revived by others, and he did not report the incident to the Navy. By his account, he suffered only temporary numbness and some alleged memory loss from this incident. Following approximately 2 hours of questioning, Schaetzle admitted to Dowling that he had sexual intercourse with K.S. in February 2006 in his hotel room. After making this admission, Schaetzle wrote an apology letter to K.S. in which he stated that he remembered them having sex and asked her to forgive him. Schaetzle also completed an additional signed statement in which he acknowledged having sexual intercourse with K.S. Prior to ending the interview, Schaetzle also made a call to his father, and during that call he again admitted to having sexual intercourse with K.S.

3. PRETRIAL PROCEEDINGS

On December 21, 2012, the State filed a complaint charging Schaetzle with first degree sexual assault. Schaetzle initially retained private counsel and waived his right to a preliminary hearing. His retained representation withdrew prior to his arraignment. The withdrawal of Schaetzle's private counsel and some subsequent confusion in appointing the public defender's office caused Schaetzle's arraignment to be postponed until August 12, 2013. At the arraignment, the State filed the information charging Schaetzle with first degree sexual assault.

On November 21, 2013, Schaetzle filed a motion to suppress any statements he made to law enforcement after February 6, 2006. At the hearing on the motion to suppress, Schaetzle argued that his interview with Dowling was a custodial interrogation during which he was coerced into making incriminating statements. Therefore, he asserted that any statements Dowling obtained during that interview were not knowingly, intelligently, and voluntarily given.

The State called Dowling as its only witness. Dowling testified to the circumstances of the interview and confirmed that Schaetzle's participation in the interview was voluntary. He denied coercing Schaetzle at any point during the interview and specifically refuted Schaetzle's claims that he pointed to his gun in an effort to intimidate him. In addition to Dowling's testimony, the

State also offered Schaetzle's written waiver of his *Miranda* rights, a video recording of the entire interview, and a written transcript of Dowling's deposition.

Schaetzle also testified at the hearing. Schaetzle generally testified that Dowling employed threatening tactics to obtain his confession. Specifically, Schaetzle stated that Dowling used an accusatory tone during the interview and rested his hand on his gun at various points during the interview. Schaetzle further testified that he believed Dowling might pull his gun on him if he did not admit to the sexual assault allegations. He reiterated that his statements, both written and verbal, were not given freely and voluntarily.

The district court overruled Schaetzle's motion to suppress in a written order. The court concluded Schaetzle's interview with Dowling was not a custodial interrogation and further determined that Schaetzle had been properly advised of his *Miranda* rights. The court also rejected Schaetzle's claims that Dowling had employed coercive or intimidating tactics during the interview.

### 4. TRIAL AND SENTENCING

A 2-day jury trial commenced on March 11, 2014. K.S. was the State's main witness and she testified to the events at the hotel in February 2006. According to K.S., the three girls--K.S., A.S., and Schaetzle's stepsister--informed their parents that they would be sleeping in Schaetzle's hotel room that night. The girls and Schaetzle talked together in his room about Schaetzle's brother's recent death until Schaetzle asked for time alone in the room with K.S. After the other two left, Schaetzle offered K.S. an alcoholic mixed drink. K.S. testified that she had a total of two mixed drinks with Schaetzle that night and began to feel intoxicated. While she was feeling the effects from the drinks, she experienced Schaetzle become more mean and aggressive. Eventually, Schaetzle came over to the bed on which she had been sitting and laid himself on top of her. K.S. reported that Schaetzle began touching different parts of her body including her shoulders, chest, breasts, and inner thighs. While he was touching her, Schaetzle told K.S. "We're family. We do this. This is what family does." Eventually, Schaetzle began to kiss K.S. and then he removed his jeans. Schaetzle then removed K.S.'s clothing and had sexual intercourse with her. K.S. testified that the actual intercourse lasted no more than 5 minutes and Schaetzle continued to repeat his earlier statement about family engaging in this type of activity. At the end, Schaetzle removed his penis from K.S.'s vagina and ejaculated onto the sheets.

After Schaetzle finished, K.S. ran into the bathroom, locking herself inside. K.S. realized she was bleeding and spent approximately 5 to 10 minutes trying to clean up. When she emerged from the bathroom, she walked over to a separate bed in Schaetzle's room and went to sleep. Before breakfast the next morning, Schaetzle again told K.S. "We're family. This is what family does. No one's going to believe you if you say anything." Because she was still scared from what had happened the night before, K.S. testified that she did not mention this incident to anyone in the family.

K.S.'s next interaction with Schaetzle occurred when he drove through North Platte a few months later. Schaetzle stopped at K.S.'s parents' home on his way to visit his mother and stepfather in Amherst, Nebraska. When leaving town, Schaetzle requested that K.S. ride in the car with him so she could provide directions. K.S. testified that while she was alone in the car with

Schaetzle he again told her, "We're family. This is what family does. If you say anything, no one's going to believe you at this point."

During K.S.'s cross-examination, Schaetzle repeatedly questioned why K.S. delayed in reporting the sexual assault. Schaetzle emphasized that K.S. had many opportunities to tell her parents, counselor, and even Schaetzle's mother about the assault prior to her reporting in 2012. K.S. also admitted that she may have forgotten some of the unimportant details surrounding the family gathering in 2006, but she was adamant that she had never wavered in her story about Schaetzle having sexual intercourse with her.

A.S. also testified regarding the family gathering in 2006. According to her testimony, Schaetzle was very close to K.S. during that gathering and she observed K.S. and Schaetzle laying together on the same bed in Schaetzle's hotel room watching television. A.S. did not personally observe anything inappropriate that night. In fact, K.S. never told A.S. about having been assaulted by Schaetzle until K.S. reported the incident in 2012.

The State called Dowling as its final witness. Dowling's testimony generally consisted of his recounting of the various steps in his investigation into K.S.'s sexual assault allegations against Schaetzle. When Dowling testified to conducting an interview with Schaetzle, the State offered into evidence the video recording. Schaetzle objected to the State's offer on the grounds he raised at the motion to suppress hearing and as to foundation. The court overruled Schaetzle's objections and permitted the State to play the entire interview for the jury. Following the video, the State offered into evidence the two written statements Schaetzle authored at the end of the interview. The court overruled Schaetzle's general objection to each statement.

The State rested after Dowling's testimony. Thereafter, outside the presence of the jury, Schaetzle made two motions. First, he moved to dismiss the charge because the State had failed to make a prima facie case sufficient to submit to the jury. The court overruled the motion. For his second motion, Schaetzle moved for a mistrial because the State had published the entirety of Schaetzle's interview to the jury. Here, Schaetzle raised for the first time the fact that the interview contained instances where Dowling references a second allegation of sexual assault by K.S. against Schaetzle. Although the court also overruled this motion, it offered Schaetzle the opportunity to provide a limiting instruction at the close of the evidence. In response to the court's offer, Schaetzle stated that he would consider providing such a limiting instruction but was hesitant to reinforce any of the references to a second allegation to the jury.

In his defense, Schaetzle called his stepsister, mother, and stepfather as witnesses. All three testified that Schaetzle could not have sexually assaulted K.S. that night in February 2006 because his stepsister slept in the same bed with him. According to Schaetzle's mother, she sent Schaetzle's stepsister back to Schaetzle's hotel room after she learned that Schaetzle had been left alone with K.S. Schaetzle's mother further explained that she wanted her daughter in the room because she feared K.S. would initiate sexual activity with Schaetzle if they were left alone. Schaetzle's stepsister testified that she left Schaetzle's room for approximately 10 minutes before returning. However, on cross-examination, she admitted that she may have been out of the room for a longer period of time. Additionally, each of these witnesses admitted that they had not disclosed the fact that Schaetzle had slept in the same bed as his stepsister prior to their testimony at trial.

Schaetzle also testified on his own behalf. He acknowledged that certain aspects of K.S.'s testimony were accurate; namely, that he had asked for time alone in his hotel room with her and that he had given her alcohol that night. Schaetzle testified that he recalled spending approximately 30 minutes alone with K.S. so they could talk about Schaetzle's brother's death. His only other recollection of that night was going to sleep and then awakening the next morning to find his sister next to him in the bed. Throughout his testimony Schaetzle vigorously denied having sexually assaulted K.S.

Schaetzle admitted that he had embellished the story of his electrocution in the Navy. He stated that he told people he had been electrocuted by 1,250 volts, rather than 440 volts, because the story sounded "cooler". Despite this embellishment, Schaetzle still claimed that his electrocution caused "twitches" and "memory loss". He further explained that because his electrocution constituted a rules violation, he never reported the incident because he feared being kicked out of the Navy.

Schaetzle also addressed his interview with Dowling during his testimony. He testified that he had made a false confession during that interview. Although he admitted to having confessed to sexually assaulting K.S. during the interview, Schaetzle claimed that he made this confession only after having been in the room with Dowling for over 2½ hours. Schaetzle asserted that he felt as though he could not leave the interview room until he had told Dowling "what he wanted to hear, which was not the truth". Schaetzle also stated that he admitted to the assault because Dowling had manipulated his emotions by mentioning his deceased brother and also referring to Schaetzle's ability to have custody of his daughter.

After deliberating, the jury found Schaetzle guilty of first degree sexual assault. Following trial, Schaetzle obtained new counsel prior to sentencing. The court sentenced him to a term of 14 to 22 years in prison. He filed this timely appeal.

## II. ASSIGNMENTS OF ERROR

Schaetzle claims, summarized and restated, that the district court erred when it (1) overruled his motion to suppress his confession; (2) allowed the State to play the entire video recording of his interview and thereby expose the jury to comments regarding an uncharged offense; (3) overruled his motion for mistrial; (4) improperly instructed the jury; and (5) imposed an excessive sentence. Schaetzle also asserts there was insufficient evidence to support his conviction and that his trial counsel was ineffective.

## III. STANDARDS OF REVIEW

In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination. *State v. Turner*, 288 Neb. 249, 847 N.W.2d 69 (2014).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules

make discretion a factor in determining admissibility. *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014).

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance? *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014).

## IV. ANALYSIS

### 1. MOTION TO SUPPRESS

Schaetzle's first assignment of error focuses on the trial court's decision to overrule his motion to suppress. At the hearing on the motion to suppress, Schaetzle contended that his confession on November 27, 2012, occurred during a custodial interrogation and that he was coerced throughout the interview. Therefore, he asserted that his statements were not made knowingly, intelligently, and voluntarily. On appeal, he renews his earlier contention that his confession was involuntary and he also claims that the court did not properly weigh the fact that K.S. did not report the assault until 7 years after it occurred.

The Due Process Clause of U.S. Const. amend. XIV and the due process clause of Neb. Const. art. I, § 3, preclude admissibility of an involuntary confession. *State v. Turner*, 288 Neb. 249, 847 N.W.2d 69 (2014). Whether a confession or statement was voluntary depends on the

totality of the circumstances. *Id*. Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the 14th Amendment. *Id*. The State has the burden to prove that a defendant's statement was voluntary and not coerced. *Id*.

Having reviewed the record in this case, we find no error in the trial court's conclusion that Schaetzle was not in custody when he gave his confession. *Miranda v. Arizona*, 384, U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination. *State v. Juranek*, 287 Neb. 846, 844 N.W.2d 791 (2014). A person is in custody for purposes of *Miranda* when there is a formal arrest or a restraint on one's freedom of movement to the degree associated with such an arrest. *Id*. Dowling clearly advised Schaetzle prior to beginning the interview that he would not be arrested that day and also informed him that he did not have to participate in the interview. We reject any claims that Schaetzle's statements were made during a custodial interrogation.

We further conclude that the video of the interview negates any claim that Dowling obtained Schaetzle's statements through coercive means. After giving Schaetzle the advisement that he would not be arrested that day and that his participation in the interview was voluntary, Dowling then explained to Schaetzle his *Miranda* rights. Schaetzle verbally indicated that he understood these rights and also signed a written waiver. The video shows Dowling acting professionally throughout the interview and he repeatedly asks Schaetzle whether he had been treated properly. At no point in the video does Dowling reference his holstered gun in an attempt to intimidate Schaetzle. Similarly, Schaetzle never mentions Dowling's gun during the interview. The district court did not err when it overruled Schaetzle's motion to suppress.

Finally, we reject Schaetzle's argument that consideration must be given to the fact that K.S. delayed over 6 years in reporting the assault. This argument has no relation to the issues raised in the motion to suppress regarding whether Dowling complied with *Miranda* or whether Schaetzle was coerced into giving a confession. This assigned error is without merit.

2. ALLEGATIONS OF SECOND SEXUAL ASSAULT

During the trial, the State played the entire video recording of Schaetzle's interview with Dowling. At three separate instances during the interview Dowling briefly asks Schaetzle whether he recalled K.S. performing any sexual acts with him at her parent's home in November 2006. Schaetzle denied this separate event occurred each time Dowling made reference to it.

On appeal, Schaetzle assigns two errors which raise the issue of the State's failure to comply with Neb. Rev. Stat. §§ 27-404 and 27-414 (Cum. Supp. 2014) for the admission of this video evidence. He argues that he was prejudiced by the court allowing the jury to hear of this other alleged incident involving K.S. The State contends Schaetzle has waived this argument by failing to properly object at trial.

We agree with Schaetzle that the State did not request a hearing outside of the jury's presence in order to establish the admissibility of the entirety of this video. See § 27-414(2) and (3). However, as has been often recited, the failure to make a timely objection waives the right to assert prejudicial error on appeal. See *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). When

an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id*. At the State's offering of this video during the trial, Schaetzle objected based on the grounds he had raised at the hearing on the motion to suppress and on foundation. At no point did Schaetzle raise any issue regarding §§ 27-404 or 27-414. Further, while the State played the video for the jury, Schaetzle did not object during the portions of the interview when Dowling briefly questioned Schaetzle regarding this other alleged incident. Schaetzle only informed the court of this issue in his motion for mistrial after the State had concluded presenting its evidence.

Because Schaetzle did not properly object to this evidence below, he has waived his right to assert prejudicial error on appeal.

### 3. MOTION FOR MISTRIAL

As noted above, Schaetzle moved for a mistrial at the conclusion of the State's case in chief. He contended that the State had improperly referenced a second sexual assault for which he had not been charged. Specifically, he informed the court that this other alleged sexual assault had been referenced various times during his recorded interview with Dowling and the jury had been allowed to watch the entire video. The district court overruled his motion, but offered Schaetzle the opportunity to provide a limiting instruction. The record reveals that Schaetzle never provided a limiting instruction. Now, Schaetzle contends that the district court erred by overruling his motion for mistrial.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014). A defendant seeking mistrial must prove that an alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id*.

In this case, the trial court did not abuse its discretion in denying Schaetzle's motion for mistrial. As discussed in the previous section above, Schaetzle had the opportunity at trial to object to this evidence and failed to do so. Thereafter, the court presented him with the opportunity to provide a limiting instruction for the jury and Schaetzle did not provide such an instruction. Additionally, we observe these references were briefly made in the context of an interview which lasted over 3 hours. Based on this record, we cannot conclude that Schaetzle was actually prejudiced by the district court's decision to overrule his motion for mistrial. This assigned error is without merit.

### 4. JURY INSTRUCTIONS

In his fifth assignment of error, Schaetzle contends that the district court improperly instructed the jury. He argues the court's instruction relating to Schaetzle's confession was vague and difficult to interpret and also states that a limiting instruction should have been given to address the references to a second, uncharged sexual assault. We reject both arguments.

To address Schaetzle's testimony at trial that his confession was involuntary, the court provided the following jury instruction:

Instruction No. 11

There has been evidence that the Defendant, Stephen J. Schaetzle, made a statement to law enforcement officers. You may rely on any such statement only if you decide beyond a reasonable doubt:

1. That the Defendant made the statement; and

2. That the Defendant understood what he was saying; and

3. That the statement was freely and voluntarily made under all the circumstances surrounding its making.

If you decide that the State did not prove these three things beyond a reasonable doubt, then you must disregard that particular statement even if you think [it is] true.

Schaetzle objected to this instruction on the basis that it was difficult to interpret the last paragraph. He also requested that something be added to the instruction because of Schaetzle's position that he made a false confession. The court overruled the objection, stating that this instruction had been taken from the "form book".

The court's instruction addressing Schaetzle's confession is taken directly from the Nebraska Jury Instructions. See NJI2d Crim. 6.0. The Nebraska Supreme Court has stated that a trial court should usually give an instruction from the Nebraska Jury Instructions in a criminal case if an applicable instruction is available. See *State v. Lavalleur*, 289 Neb. 102, 853 N.W.2d 203 (2014); *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011). We find nothing vague or difficult to interpret in this instruction and conclude the court did not err in utilizing this particular instruction.

Finally, we reject Schaetzle's argument that the court should have provided a limiting instruction to address the references of a second sexual assault in his video interview with Dowling. The court had provided Schaetzle with the opportunity to propose such a limiting instruction after Schaetzle moved for mistrial. In response, Schaetzle expressed hesitation in requesting such an instruction because he did not want to further reinforce those references in the jury's mind. Because the court had provided Schaetzle with the opportunity to request a limiting instruction, which he ultimately did not utilize, the court did not err when it did not give a limiting instruction to the jury. This assigned error is without merit.

5. SUFFICIENCY OF EVIDENCE

In his sixth assignment of error, Schaetzle challenges the sufficiency of the evidence to support his conviction. The argument accompanying this assigned error completely focuses on the arguments we have rejected above. In other words, Schaetzle's contention is that but for the errors he assigns above, the jury would not have had sufficient evidence to convict him of first degree sexual assault. We reject this argument.

Here, Schaetzle was convicted of first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2008). Section 28-319 provides in relevant part: "Any person who subjects another person to sexual penetration . . . when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree". Sexual penetration includes sexual intercourse in its ordinary meaning, cunnilingus,

fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. See Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2014).

Having reviewed the record in this case, there clearly is sufficient evidence from which a jury could have found Schaetzle guilty beyond a reasonable doubt. K.S. testified that Schaetzle had sexual intercourse with her in a North Platte hotel room. At the time of the incident, K.S. was 14 years old while Schaetzle was 20 years old. Additionally, Schaetzle admitted to having committed this offense before he eventually retracted his confession prior to trial. Because there was sufficient evidence to support Schaetzle's conviction, this assigned error is without merit.

6. EXCESSIVE SENTENCE

Schaetzle also asserts that the district court erred by imposing an excessive sentence. He does not argue in his brief that his sentence is outside the statutory limit for the offense, but, rather, contends that the court failed to consider numerous factors in determining the sentence. Specifically, Schaetzle notes various positive aspects in his life: he has no prior criminal history, is enrolled in college and heavily involved in campus activities, and supports a young daughter. He also asserts that his continued belief in his innocence should not require a more prolonged sentence. Finally, Schaetzle contends that the 6-year delay in reporting this incident should weigh in favor of a lesser sentence.

Schaetzle was convicted of first degree sexual assault, a Class II felony. Neb. Rev. Stat. § 28-319 (Reissue 2008). Class II felonies are punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Schaetzle's sentence of 14 to 22 years' imprisonment is clearly within the statutory guidelines.

Sentences within the statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. See *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Tolbert*, 288 Neb. 732, 851 N.W.2d 74 (2014). In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *State v. Sikes*, 286 Neb. 38, 834 N.W.2d 609 (2013). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts surrounding the defendant's life. *Id.*

The presentence report shows that Schaetzle was 28 years old at the time of sentencing and had no prior criminal record other than two traffic violations he self-reported to the probation officer. Schaetzle enlisted in the Navy in July 2003, and he was on active duty from January 2004 through 2009. At the time of trial, Schaetzle was in the Navy Reserves. In addition to his service

with the Navy Reserves, Schaetzle was a full-time college student enrolled in a bachelor of innovations program, which is a combination of the studies of business and mechanical engineering. In addition to his studies, Schaetzle was an active member of a fraternity, president/coach of the wrestling club team, and a member of both the science association and chess club.

Schaetzle is divorced and has a 5-year-old daughter with his former wife. Although he does not have primary custody of his daughter, Schaetzle exercised parenting time every other weekend and part of the summer. Schaetzle's former wife wrote a letter of support for Schaetzle which is contained in the presentence report along with numerous other support letters from various individuals familiar with Schaetzle.

As part of the presentence process, Schaetzle completed a LS/CMI assessment. Schaetzle's total score on the assessment was in the very low risk category, but he scored in the medium risk range for the pro-criminal attitude/orientation sub-component because he continued to deny any wrongdoing. Because of the severity of the offense, as well as Schaetzle's unwavering denial of culpability, the probation office recommended a sentence of incarceration.

Before imposing the sentence, the district court announced that it had reviewed the presentence report and found many "positive things" in Schaetzle's background. However, the court also stated that Schaetzle's actions could only be characterized as "predatory behavior" by which he took advantage of a vulnerable relative. After considering the appropriate statutory factors, the court determined a lengthy sentence of imprisonment was warranted.

Because Schaetzle's sentence is supported by competent evidence and is within the statutory guidelines, we conclude the district court did not abuse its discretion in imposing the sentence.

### 7. INEFFECTIVE ASSISTANCE OF COUNSEL

Schaetzle has different counsel on appeal than he did at trial below. Therefore, he must assert in this direct appeal any known or apparent claims of ineffective assistance of counsel. Under Nebraska law, in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id*. The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013).

On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record, and the fact that an ineffective assistance of counsel claim is raised on

direct appeal does not necessarily mean that it can be resolved. *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014). The determining factor is whether the record is sufficient to adequately review the question. *Id*. An appellate court will not address an ineffective assistance of counsel claim on direct appeal if it requires an evidentiary hearing. *Id*. In order to avoid the procedural bar to a future postconviction action, appellate counsel must present the ineffective assistance of counsel claim on direct appeal with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

In this direct appeal, Schaetzle claims that he received ineffective assistance of counsel in six respects. He claims that his trial counsel was ineffective for failing to (1) object to two of the exhibits the State offered at trial, (2) raise the issue of the victim's delayed reporting of the assault, (3) object to the State's failure to file the information until three months after the first hearing, (4) ask for a limiting instruction regarding prior bad acts evidence, (5) prepare a sample instruction after objecting to the court's proposed jury instructions, and (6) request a psychological evaluation. The State contends the record is sufficient to address each of Schaetzle's claims of ineffective assistance of counsel except for the last claim. We will separately address each of Schaetzle's claims.

### (a) Objecting to State's Exhibits at Trial

Schaetzle claims that his trial attorney was ineffective because he failed to object to the State's offer of Exhibits 2 and 5. He does not claim that his trial counsel should have raised any specific objection, but rather that his trial counsel completely failed to raise any objection to the State's exhibits. This claim is refuted by the record. At trial, Schaetzle's trial counsel objected to the State's offer of each of these two exhibits. When the State offered Exhibit 2, the video of the interview, Schaetzle's attorney objected based upon the reasons raised in the motion to suppress and as to foundation. The district court overruled the objections. As to the State's offer of Exhibit 5, Schaetzle's apology letter to K.S., Schaetzle's trial counsel raised a general objection which the district court also overruled.

The record is clearly sufficient to address this claim and we find Schaetzle is not entitled to relief.

### (b) Remoteness of Incident to Filing of Charges

Schaetzle also claims that his trial counsel was ineffective for failing to raise the issue of K.S.'s lengthy delay in reporting the sexual assault. Without citing any authority, Schaetzle claims that "[a] simple search would have uncovered that for a sexual assault charge, the reporting of such sexual assault had to be within a reasonable period of time from the occurrence of the alleged incident to the time it was reported." Brief for appellant at 31-32. Schaetzle contends that K.S.'s delay in reporting this incident remains an unresolved question due to his trial counsel's alleged deficient performance.

To address this claim, we begin by noting that there is no statute of limitations for prosecution or punishment of first degree sexual assault. See Neb. Rev. Stat. § 29-110(7) (Cum.

Supp. 2014). Therefore, we cannot conceive what more Schaetzle's trial counsel could have done other than to raise the issue of K.S.'s delay in reporting the assault at trial. In fact, the record shows that trial counsel clearly raised K.S.'s delay in reporting at trial. He devoted significant effort while cross-examining K.S. to highlight that she had numerous opportunities to report this incident prior to August 2012. Specifically, Schaetzle's trial attorney questioned K.S. as to why she never mentioned this assault to her parents, her counselor, or Schaetzle's mother, whom she visited at her home during college. Additionally, during both opening and closing arguments, Schaetzle raised the issue that K.S. did not report having been assaulted until 6½ years after the incident. The record clearly demonstrates that Schaetzle's trial counsel could not have been ineffective because he raised this issue at trial. Schaetzle is not entitled to relief on this claim.

### (c) Failure to Contest Filing of Information
### Five Months After Preliminary Hearing

The record reflects that Schaetzle waived his preliminary hearing on March 29, 2013. Due to confusion regarding Schaetzle's representation, the State did not file the information until August 12, 2013. Schaetzle contends his trial counsel should have raised some sort of objection to the State's delay in filing the information and was ineffective for failing to do so. We conclude this claim does not merit relief.

The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable preindictment delay. *State v. Glazebrook*, 282 Neb. 412, 803 N.W.2d 767 (2011). But dismissal under the Due Process Clause is proper only if a defendant shows (1) the prosecuting authority's delay in filing charges caused substantial prejudice to the defendant's right to a fair trial and (2) the delay was an intentional device to gain an unfair tactical advantage over the defendant. In order to obtain relief, the defendant must show actual prejudice. See *id*.

Schaetzle does not allege that the State's delay in filing the information actually prejudiced his right to a fair trial. He merely asserts that his trial counsel should have raised the question why the State had not filed the information earlier. Such an allegation cannot not rise to the level of showing deficient performance by his trial counsel. Our review of the record also leads us to conclude that Schaetzle could not establish actual prejudice by the State's delay in filing the information. This allegation is without merit.

### (d) Failure to Request Limiting Instruction

Schaetzle asserts his trial counsel was also ineffective because he failed to request a limiting instruction that the jury could not consider the references of a second sexual assault which were contained in the video of Schaetzle's interview. The State responds that Schaetzle's attorney made a strategic decision not to request such an instruction and this decision was reasonable.

We conclude the record is not sufficient to address this claim. The record reflects Schaetzle's trial counsel did not immediately request a limiting instruction after the motion for mistrial was overruled because he feared such an instruction could reinforce the idea of a second sexual assault in the jurors' minds. However, at the same time, trial counsel also stated that he would consider the offer. The record does not reflect whether Schaetzle's trial counsel strategically determined not to request this instruction or whether he simply failed to bring the limiting

instruction to the court's attention again during the jury instruction conference. An evidentiary hearing is necessary to examine counsel's strategy.

## (e) Failure to Provide Alternate Jury Instruction

In addition to claiming ineffective assistance relating to his trial counsel's failure to request a limiting instruction, Schaetzle also argues that his trial counsel should have provided an alternate instruction to the court's Instruction No. 11. He asserts that providing such an alternate instruction would have prevented the jury from misinterpreting the court's instruction.

The record is sufficient to address this claim and we conclude Schaetzle is not entitled to relief. We have already addressed this instruction in this opinion and have determined there is nothing vague or difficult to interpret in the instruction. We concluded that the trial court properly used an instruction from the Nebraska Jury Instructions. Trial counsel was not deficient in failing to provide an alternate instruction.

## (f) Request for Psychological Evaluation

Schaetzle also asserts that his trial counsel should have requested that he undergo a psychological evaluation. He claims that such an evaluation was warranted because of his involuntary confession and the fact that he suffered from memory loss due to his electrocution in the Navy. He believes that such an evaluation may explain why he made certain statements about the incident.

The record is insufficient to review this claim on direct appeal and we decline to address it.

## V. CONCLUSION

For the foregoing reasons, we find no merit to Schaetzle's assertions on appeal. We affirm.

AFFIRMED.